IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ERNEST NGONGA, et al., )
 )
    Plaintiffs, )
 )
v. ) Civil Action No. 1:18-cv-975
 )
KIMBERLY J. ZANOTTI, )
Field Office Director, )
USCIS Washington Field Office, )
et al., )
 )
    Defendants. )

## MEMORANDUM OPINION

Plaintiff Ernest Ngonga filed an I-130 Immigration Petition for Alien Relative on behalf of his wife, Plaintiff Danny Fokou. Defendant, U.S. Citizenship and Immigration Services (USCIS), denied the Petition under 8 U.S.C. § 1154(c) because it determined that Ms. Fokou had previously entered a marriage with Valery Nkwingwah Keyi for the purpose of evading the United States' immigration laws. Plaintiffs appealed the denial to the Board of Immigration Appeals (BIA) which affirmed USCIS' determination. Plaintiffs allege that the denial of the petition and its affirmance were arbitrary and capricious in violation of the Administrative Procedure Act (APA). This matter comes before the Court on the parties' cross Motions for Summary Judgment (Dkts. 24 & 27).

Ms. Fokou is native to and a citizen of Cameroon who has resided in the United States since July 2003. Ms. Fokou was initially admitted on a visitor visa for a temporary period not to exceed January 3, 2004. Ms. Fokou did not leave the United States prior to the expiration of her visa.

Upon arrival in the United States, Ms. Fokou was married to a fellow Cameroonian who she divorced in October of 2003. She remained in the United States and married a Mr. McFadden in July of 2004 in Virginia. While still married to Mr. McFadden in December 2004, Ms. Fokou gave birth to a child fathered by Mr. Ngonga. Ms. Fokou subsequently divorced Mr. McFadden in February of 2008.

Shortly after her divorce from Mr. McFadden, Ms. Fokou married Mr. Keyi, a United States citizen and Virginia resident, in May 2008. Approximately one month after this marriage began, Ms. Fokou gave birth to a second child fathered by Mr. Ngonga in June of 2008.

On July 8, 2008, Mr. Keyi signed an I-130 Petition for Alien Relative that named Ms. Fokou as his spouse and beneficiary. This petition was initially approved by USCIS on March 24, 2009.

In May of 2009, Mr. Keyi and Ms. Fokou began living separately and apart in preparation for a divorce action. While still legally separated, the couple appeared before the USCIS

2

Field Office in Fairfax, Virginia on August 28, 2009 for an interview on the pending I-130 petition. During the interview, Mr. Keyi and Ms. Fokou indicated that they were still married and living together. The officer interviewing the couple recorded their responses in a written format. Mr. Keyi initialed and dated each page of his statement but eventually refused to sign it. At the same interview, Mr. Keyi signed a letter withdrawing the I-130 petition, as well as a letter stating that he did not enter into the marriage with Ms. Fokou to assist in her receiving a green card. Due to this withdrawal, USCIS automatically revoked the petition on August 31, 2009. On December 12, 2011, Ms. Fokou appealed the revocation of the petition to the BIA which dismissed the appeal on April 18, 2012 for lack of standing.

During Ms. Fokou's marriage to Mr. Keyi, the couple shared a residence with Mr. Ngonga. While living together, Ms. Fokou and Mr. Ngonga engaged in relations typical of a married couple. Plaintiffs state that Ms. Fokou and Mr. Ngonga wanted to be together for many years as evidenced by their frequent interludes, but that Mr. Ngonga was not able to commit to and support Ms. Fokou and their children. Mr. Keyi and Ms. Fokou were ultimately divorced on July 23, 2010.

In June of 2010, Mr. Ngonga, who was previously on asylee status, received approval of his I-485 Application to Register

Permanent Residence or Adjust Status, granting him lawful permanent resident status.

Nearly three months later and two months after her divorce, Ms. Fokou married Mr. Ngonga on September 25, 2010. Ms. Fokou gave birth to her third child fathered by Mr. Ngonga in April 2011. On October 15, 2010, Mr. Ngonga signed an I-130 Petition naming Ms. Fokou as the beneficiary.

On September 4, 2014, Mr. Ngonga was interviewed under oath for his pending application to become a naturalized citizen, Form N-400. During the interview, Mr. Ngonga made numerous statements in English that were transcribed. Mr. Ngonga signed the memorialized statements at the end of the interview, as did the immigration officer conducting the interview. One question asked of Mr. Ngonga concerned Ms. Fokou's prior marriages and whether they were to help her immigration status; the interviewer raised no specific marriage of Ms. Fokou's. Mr. Ngonga stated that, "I know she married the last one, [Mr. Keyi] for that. She told me that."

Approximately four months after Mr. Ngonga's N-400 interview and two days before Ms. Fokou's I-130 petition interview, Mr. Keyi signed a statement that he and Ms. Fokou had married each other for love.

On March 14, 2017, USCIS issued a Notice of Intent to Deny (NOID) to Mr. Ngonga regarding his I-130 petition on behalf of

4

Ms. Fokou. The NOID stated that the record established that Ms. Fokou's marriage to Mr. Keyi had been intended to evade immigration laws. The NOID provided numerous evidence based reasons for this determination including (1) the couple's driver's licenses had different addresses as opposed to the shared address claimed in the first I-130 petition, (2) discrepancies in the testimonies each gave at the prior I-130 interview, (3) Mr. Keyi's withdrawal of the prior petition, (4) Mr. Ngonga's statement made at his naturalization interview, (5) the suggestion of a romantic relationship between Ms. Fokou and Mr. Ngonga during her marriage to Mr. Keyi as shown by her bearing Mr. Ngonga's children while married to other men, and (6) Mr. Ngonga's appearance in photos with Ms. Fokou and Mr. Keyi as further evidence of a prior romantic relationship. The NOID concluded that USCIS could not approve Mr. Ngonga's I-130 petition for Ms. Fokou because of Section 204(c) of the Immigration and Nationality Act and allowed Mr. Ngonga 30 days to rebut the evidence.

Through counsel, Mr. Ngonga provided a response to the NOID. This response included a statement from Mr. Keyi that stated that he and Ms. Fokou did live together during their marriage and he withdrew his I-130 petition on her behalf because he was hurt and embarrassed by some of the questioning of the immigration officer. Mr. Ngonga also submitted a sworn

5

statement that his prior answer regarding Ms. Fokou's previous marriage was inaccurate and that he did not mean to say she had married Mr. Keyi to skirt immigration laws, but instead that "Immigration" believed that to be the case.

USCIS did not find these submissions altered its initial determination that Mr. Keyi and Ms. Fokou's marriage was not bona fide. The determination found that Mr. Keyi's statement was not supported by documentary evidence. Further, USCIS found that Mr. Keyi's statement regarding questioning was likely not the entire truth as the withdrawal of the earlier petition came after him being confronted about inconsistencies between his and Ms. Fokou's answers. The inconsistent answers and refusal to sign the transcript of his interview led to a finding that his more recent statement was not credible. In addition, USCIS did not find Mr. Ngonga's most recent statement to be credible as it did not line up with the questions he was asked during his interview. In most relevant part, the immigration officer did not mention Mr. Keyi, Mr. Ngonga raised Ms. Fokou's prior marriage to Mr. Keyi when responding. At the end of its investigation, USCIS concluded that Ms. Fokou married Mr. Keyi for the purpose of evading the United States' immigration laws and denied the I-130 petition accordingly.

Mr. Ngonga appealed the denial to the BIA. The BIA dismissed the appeal finding that there was substantial and

probative evidence on the record to support USCIS's final determination. The BIA pointed to much of the same evidence as USCIS and came to the same conclusions regarding the credibility of Mr. Keyi's and Mr. Ngonga's most recent statements. The BIA also determined that their prior statements were actually corroborated by the evidence of differing addresses, Ms. Fokou having children with a man other than her husband, and the fact that Mr. Keyi had an interest in not being found party to a fraudulent marriage. After its de novo review, the BIA determined the USCIS had made the proper credibility determinations and there was substantial and probative evidence to support the conclusion that Ms. Fokou married Mr. Keyi to evade the United States' immigration laws.

Mr. Ngonga now brings this suit asking the Court to review the agencies' determinations and reverse them as being arbitrary and capricious or otherwise contrary to law. The parties have both moved for summary judgment.

Courts use a highly deferential standard when reviewing denials of I-130 petitions "with a presumption in favor of finding the agency action valid." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009). A court may only overturn a denial if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court's "inquiry into the facts is to be

searching and careful," but it "is not empowered to substitute its judgment for that of the agency." Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). When reviewing the record, a court must defer to agency judgments of credibility and weight of evidence. Gonahasa v. INS, 181 F.3d 538, 542 (4th Cir. 1999). On motions for summary judgment in an APA action, there can be no genuine issues of material fact as the fact is either in the record or it is not. See, e.g., Shipbuilders Council of Am. v. DHS, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011). If a court determines there is a rational basis in the record to support an agency's denial of an I-130 petition, it must affirm the decision. Ohio Valley, 556 F.3d at 192.

Plaintiffs' primary complaint with the agencies' denials of Mr. Ngonga's I-130 Petition is that they disagree with the weight the agencies' accorded certain pieces of evidence. In particular, Plaintiffs contend that Mr. Ngonga's statement regarding the fraudulent nature of Mr. Keyi and Ms. Fokou's marriage should have been given very little if any weight for a variety of reasons. The decisions rendered by the agencies', however, reflect a complete review of the entire administrative record and provide ample explanation for why certain pieces of evidence were given the weight they were. Furthermore, the agencies' provided reasoning why they believed there was

substantial and probative evidence of marriage fraud despite Mr. Ngonga's later retractions and the additional statements and documents provided by Mr. Keyi and Ms. Fokou. The Court is bound to defer to the agencies' judgments of credibility and weighing of the evidence. Gonahasa, 181 F.3d at 542. Additionally, the administrative record clearly provides a rational basis supporting the agencies' findings of substantial and probative evidence of marriage fraud.

Plaintiffs' related contentions that the agencies' decisions were otherwise arbitrary and capricious are also unavailing. The agencies were permitted, and in fact had a duty, 8 U.S.C. § 1154(b), to investigate Ms. Fokou's prior marriage and review the administrative records of prior petitions of which she was the beneficiary in order to make a determination of whether her prior marriage was fraudulent, 8 U.S.C. § 1154(c). The is true regardless of how long ago the prior marriage was as the agencies may look at all relevant evidence, including that which originated from the agencies' prior dealings with the beneficiary of a petition. 8 C.F.R. § 204.2(a)(1)(ii); see also Matter of Tawfik, 20 I. & N. Dec. 166, 167-68 (BIA 1990). The agencies were also allowed to rely on Mr. Ngonga's statements during his naturalization interview even though they were hearsay. See, e.g., Ogbolumani v. Napolitano, 557 F.3d 729, 734 (7th Cir. 2009) (noting that agencies may rely

on a hearsay statement so long as it is "probative and its use is not fundamentally unfair"). Mr. Ngonga's statements could also be used as evidence even if the immigration officer conducting the interview did not comport themselves with the agencies' guidelines. See USCIS, Adjudicator's Field Manual, Introduction, https://www.uscis.gov/ilink/docView/AFM/HTML/AFM/0-0-0-1.html (last accessed April 8, 2019); see also Diaz v. USCIS, 499 F. App'x 853, 855 (11th Cir. Nov. 27, 2012) (explaining that field manuals and internal administrative guidance documents do not have the force or effect of law and do not confer substantive federal rights).

As the agencies' decisions were rationally based on substantial and probative evidence from the record and they were not arbitrary, capricious, nor contrary to law, this Court is constrained affirm them. Therefore, Plaintiffs' Motion for Summary Judgment will be denied and Defendants' Motion for Summary Judgment will be granted. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 16, 2019